# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# VICTORIA DIVISION

| | | |
|---|---|---|
| SARCO CREEK RANCH, LLC and | § | |
| WILLIAM PARMLEY, | § | |
|    Plaintiffs, | § | |
| | § | |
|  vs. | § | Civil Action No. 6:14-cv-00013 |
| | § | |
| BRIDEY DUNN GREESON, | § | |
| MILTON S. GREESON, SARCO | § | |
| CREEK CATTLE CO., LLC, and | § | |
| SARCO CREEK LAND | § | |
| DEVELOPMENT, | § | |
|    Defendants. | § | |

## DEFENDANTS' OBJECTIONS AND RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Defendants Bridey Dunn Greeson, Milton S. Greeson, Sarco Creek Cattle Co., LLC, and Sarco Creek Land & Cattle Co., LLC (collectively, "Defendants"), by and through their attorneys of record, file these objections and response to Plaintiffs' Motion for Summary Judgment. The Court should deny Plaintiffs' motion for the following reasons:

### I.  Objection to Late-Filed "Corrected" Motion and Exhibits

1.  The Court's docket control order set the deadline for filing dispositive motions on January 5, 2015.[1] Plaintiffs filed their motion at 11:58 p.m. on the

---

[1] Docket Control Ord. 1, ECF No. 57.

night of January 5.[2]  However, the next morning, they filed additional exhibits and a "corrected" version of the motion containing exhibits not filed on January 5.[3] Defendants object to the items filed on January 6 as untimely and ask the Court to disregard or strike them.  This is not the first time Plaintiffs have tried to gain more time for briefing by filing a half-completed motion and then attempting to replace it later with a "corrected" one.[4]  The Court should not affirm this abusive tactic by reviewing the material thus filed.

## II.  Argument and Authorities

2.      Plaintiffs argue that they are entitled to summary judgment because: (1) the Court has subject matter jurisdiction; (2) Defendants have offered no evidence that Plaintiffs do not provide retail store services; (3) Defendants cannot prevail on their laches defense because they knew William Parmley objected to their use and because he did not know enough about Defendants' use to file suit sooner; (4) Defendants have no evidence that they were prior users; (5) Defendants are not entitled to a declaratory judgment because they used the wrong words in asking for it; (6) Mr. Parmley is not liable because he no longer owns the mark; (7) Plaintiffs have overcome Defendants' geographic descriptiveness defense; and (8)

---

[2] Pls.' Mot. Summ. J., ECF No. 94.
[3] Pls.' Exs. Re: Mot. Exclude Expert Testimony, ECF No. 95; Pls.' Corrected Mot. Summ. J., ECF No. 96.
[4] Pls.' Corrected Mot. Prelim. Inj., ECF Nos. 34, 35, 36 (filed April 5, 2014, to "correct" motion due on April 4); Pls.' Corrected Resp. Mot. Partial Summ. J., ECF No. 61 (filed September 10, 2014, to "correct" response due on September 9).

Defendants have admitted to infringement.[5]  Each of these arguments fails for the reasons discussed below.

## A. Legal Standard

3.      Summary judgment is proper in a case in which there is no genuine dispute of material fact.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "A fact is material only if its resolution would affect the outcome of the action, and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.'"  *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000)).  Where the burden at trial rests on the non-movant, "the movant must merely demonstrate an absence of evidentiary support in the record for the non-movant's case."  *Bayle*, 615 F.3d at 355 (quoting *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000)).  The court must construe all facts and inferences in the light most favorable to the nonmoving party.  *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005).

## B. Subject Matter Jurisdiction

4.      Plaintiffs begin their argument by asserting that the Court has subject matter jurisdiction.[6]  Subject matter jurisdiction is not a substantive element of Plaintiffs' claims for relief.  While Defendants attempted to simplify this case last

---

[5] Pls.' Mot. Summ. J. 4–12, ECF No. 94.
[6] *Id.* at 4.

summer by moving for summary judgment on several of Plaintiffs' claims based on lack of subject matter jurisdiction, the argument was fully briefed at that time, and the motion remains pending.[7] Defendants will not reargue the issue here, because it is irrelevant to Plaintiffs' summary judgment arguments.

### C. Retail Store Services

5.     Plaintiffs argue that Defendants have no evidence to support their affirmative defense that Plaintiffs do not provide Class 35 retail store services.[8] Plaintiffs make no attempt to define retail store services or show how they provide them.[9] A comparison of the correct legal definition of "retail store services" to Plaintiffs' activities shows that Defendants have a great deal of evidence to support this defense.

### i. Legal Authority

6.     International trademark classifications and the headings of the international trademark classes are established by the Committee of Experts of the Nice Union and set forth in the *International Classification of Goods and Services for the Purposes of the Registration of Marks* (10th ed. 2011) ("Nice Agreement"), which is published by the World Intellectual Property Organization. The Nice Agreement describes Class 35 services as follows:

---

[7] *See* Defs.' Mot. Partial Summ. J., ECF No. 48; Pls.' Resp. to Mot. Partial Summ. J., ECF No. 58; Pls.' Corrected Resp. to Mot. Partial Summ. J., ECF No. 61; Defs.' Reply to Resp. to Mot. Partial Summ. J., ECF No. 63.
[8] Pls.' Mot. Summ. J. 6, ECF No. 94.
[9] *See id.*

Advertising; business management; business administration; office functions.

*Explanatory Note*

Class 35 includes mainly services rendered by persons or organizations principally with the object of:
(1) help in the working or management of a commercial undertaking; or
(2) help in the management of the business affairs or commercial functions of an industrial or commercial enterprise, as well as services rendered by advertising establishments primarily undertaking communications to the public, declarations or announcements by all means of diffusion and concerning all kinds of goods or services.

*This Class includes, in particular:*

–the bringing together, for the benefit of others, of a variety of goods (excluding the transport thereof), enabling customers to conveniently view and purchase those goods; such services may be provided by retail stores, wholesale outlets, through mail order catalogues or by means of electronic media, for example, through web sites or television shopping programs;
–services consisting of the registration, transcription, composition, compilation, or systematization of written communications and registrations, and also the compilation of mathematical or statistical data;
–services of advertising agencies and services such as the distribution of prospectuses, directly or through the post, or the distribution of samples. This Class may refer to advertising in connection with other services, such as those concerning bank loans or advertising by radio.

*This Class does not include, in particular:*

–services such as evaluations and reports of engineers which do not directly refer to the working or management of affairs in a commercial or industrial enterprise (consult the Alphabetical List of Services).

An examination of the foregoing description reveals that the common denominator of Class 35 services is the provision of any kind of service that helps a producer get its goods into the hands of consumers, whether that service be the establishment of a store, the distribution of sample products, or the provision of statistical data on how best to attract customers.

7.     The United States Patent and Trademark Office's (USPTO) Trademark Manual of Examining Procedure (TMEP) contains additional guidance on what constitute retail store services:

> [A]t one time the activities of grocery stores, department stores, and similar retail stores were not considered to be services. However, it has long been recognized that gathering various products together, making a place available for purchasers to select goods, and providing any other necessary means for consummating purchases constitutes the performance of a service.

TMEP § 1301.01(a)(i) (Oct. 2011 ed.).   Additionally, the Trademark Trial and Appeal Board's (TTAB) opinion in *In re Betz Paperchem, Inc.* provides three basic criteria that determine whether a person is providing a service, as opposed to selling a good, within the meaning of the Lanham Act: "(1) a Service is the performance of some activity; (2) the activity must be for the benefit of someone other than the applicant; and (3) the activity must be recognizable as a separate activity, that is, it cannot be merely incidental or necessary to applicant's larger business."  222 U.S.P.Q. 89, 1984 WL 63026, at *2 (T.T.A.B. 1984).

8.     Together, *In re Betz Paperchem, Inc.*, the TMEP and the Nice Agreement show that Class 35 retail store services must primarily benefit third-party producers and consumers by providing a convenient venue for consumers to browse, select, and easily purchase the producers' goods.  In other words, in order to offer retail store services, Plaintiffs must somehow facilitate the purchase of horses and cattle by consumers of horses and cattle in a way that is recognizable as a separate activity from Plaintiffs' larger business of raising horses and cattle.

9.     Using this definition, a good example of a provider of retail store services featuring horses and cattle would be a livestock auction barn.  These institutions provide a convenient place for consumers of livestock to view and purchase a wide variety of stock from a large number of producers.  The producers benefit from the large number of consumers present, as well as the physical facilities that aid in the marketing and sale of the livestock.  There is usually an extensive network of pens and corrals to hold and move the animals, seating where consumers can view the animals as they are brought out, and an auctioneer to facilitate the sales.  Livestock auctions are to horses and cattle what Best Buy is to televisions and consumer electronics.

### ii.  Plaintiffs Do Not Provide Retail Store Services

10.     Plaintiffs do not provide retail store services.  To continue the analogy discussed above, the evidence shows that Plaintiffs' business is more equivalent to

the factory floor of Sony than it is to Best Buy. While it is possible to imagine an extraordinary ranch that facilitated sales in a way that was truly a separate activity from its larger business of raising livestock, for example by producing a website, a mail order catalogue, or some other method of providing consumers a convenient way to peruse and purchase a variety of livestock, most ranches are just pieces of land where livestock is produced. The evidence in this case shows that Plaintiffs' business is an ordinary ranch that produces horses and cattle, which Plaintiffs then sell. Plaintiffs do not facilitate these sales in a way that benefits anyone other than Plaintiffs, and the sales are not recognizable as a separate activity from Plaintiffs' larger business of raising livestock.

11. Mr. Parmley testified that, before he stopped selling cattle,[10] he sold more than half to people who visited his ranch and the remainder through livestock auctions.[11] He sold horses only to people who visited the ranch, not through livestock auctions.[12] Many people who visited his ranch did so in response to classified advertisements.[13] Defendants do not dispute that livestock auctions and the provision of classified advertisements are Class 35 services. The problem is that neither of these services were provided by Plaintiffs. Plaintiffs do not own or operate the Cuero or Beeville livestock auctions. Similarly, Plaintiffs do not own

---

[10] Ex. A, at 47, 52–53, 99.
[11] *Id*. at 49–50.
[12] *Id.* at 74.
[13] *See id.* at 137–38; Ex. B.

or operate the newspapers where they claim to have run their classified advertisements. Accordingly, these are not examples of the Plaintiffs providing Class 35 services, much less retail store services. Plaintiffs have also admitted that they did not operate an Internet store, a mail order catalogue, or a television shopping channel where people could buy their goods.[14]

12.     The result is that the only Class 35 service left for Plaintiffs to claim is that, when a consumer visited their ranch and purchased a horse or a cow, the sale was made in a way that was both (1) beneficial to the customer and (2) a separate activity from Plaintiffs' ranching business. The first problem with this argument is that there is nothing about purchasing directly from Plaintiffs that was beneficial to the consumer. It was not convenient; one actually had to drive out to the pasture where the animal was born to buy it, sales were only in cash, there was not a sign marking Plaintiffs' location for many years, and one was limited to livestock raised and owned by Plaintiffs, much of which was not for sale.[15] The second problem is that Plaintiffs' act of selling the livestock they had raised was not a separate activity from their larger ranching business; it was completely necessary and incidental to it. They sold the livestock because they had raised it, and they did nothing out of the ordinary compared to any other ranch.

---

[14] Ex. C.
[15] *See* Ex. A, at 49–52, 60–61, 65, 111, 123; Defs.' Resp. Mot. Prelim. Inj. 13, ECF No. 39 (discussing absence of sign).

13.     For the foregoing reasons, the Court should decline to grant Plaintiffs summary judgment on Defendants' defense and counterclaims that Plaintiffs did not provide Class 35 retail store services.

### D. Laches

14.     Plaintiffs next argue that they are entitled to summary judgment on Defendants' laches defense, because (1) they did not know their claim had ripened when they sent a cease and desist letter threatening to sue Defendants[16] and (2) Defendants had knowledge that Plaintiffs objected to their use but continued to use the term "Sarco Creek Ranch" anyway.[17]

15.     Plaintiffs' first argument, that they did not know their claim had ripened when they sent a cease and desist letter to Defendants threatening to sue them, is facially absurd.  While Plaintiffs may not have known the full extent of Defendants' activities, they knew enough in June 2009 to threaten Defendants with a lawsuit.[18]

16.     Plaintiffs' second argument is also without merit.  While Plaintiffs sent the letter in June 2009, Defendants have no record or recollection of having received it.[19]  Defendants were not aware Plaintiffs objected to their use of the term

---

[16] Ex. D.
[17] Pls.' Mot. Summ. J. 6–7, ECF No. 94.
[18] *See* Ex. D.
[19] Ex. E, at 136.

"Sarco Creek Ranch" until late 2011,[20] and did not know Plaintiffs believed Defendants had committed trademark infringement until September 2013, when Plaintiffs filed suit.[21] Indeed, in 2012, Plaintiffs attempted to dismiss Defendants' cancellation claims under the theory that Defendants lacked standing because there was no reason for Defendants to fear liability.[22]

17.     Defendants continue to maintain that this Court should grant them summary judgment on laches as a matter of law.[23] However, if the Court disagrees, the above facts at least present a genuine issue of material fact sufficient to preclude summary judgment for Plaintiffs.

### E. Prior Use

18.     Plaintiffs' fourth argument is that Defendants have produced no evidence in support of their argument that they have used the term "Sarco Creek Ranch" since 1986.[24] Based on this premise, Plaintiffs conclude that Defendants cannot prevail on the defense that Defendants are the prior users of the term.[25]

19.     Defendants have produced extensive evidence of their use of the term "Sarco Creek Ranch".[26] Indeed, this same evidence serves as the foundation for

---

[20] *See* Ex. E, at 90–91.
[21] Pl's. Original Compl., ECF No. 1.
[22] *See* Ex. G, at 5–7.
[23] Defs.' Mot. Summ. J. 27–28, ECF No. 89.
[24] Pls.' Mot. Summ. J. 7–8, ECF No. 94.
[25] *Id.* at 8.
[26] *See, e.g.*, Exs. H-1; H-2.

most of Plaintiffs' infringement claims.[27]  Plaintiffs clearly believe this use to be trademark use in interstate commerce, or they would not be suing Defendants.

20.    Mr. Greeson has stated in an affidavit that he has used the term "Sarco Creek Ranch" and the logo continuously in the same ways he does today since 1986.[28]  This is sufficient summary judgment evidence by itself to refute Plaintiffs' no evidence motion. However, Defendants do not have to have used the mark as early as 1986 to be the senior users, because the summary judgment evidence shows that Plaintiffs' use was *de minimis* at least until 2008, and likely beyond.[29]

### F. Declaratory Judgment

21.    Plaintiffs next argue that Defendants' request for a declaratory judgment fails as a matter of law because: (1) Defendants' geographic descriptiveness claim fails; (2) Defendants' failure to use claim fails; and (3) Defendants used the wrong wording in pleading it by discussing ranching services instead of Class 35 retail store services featuring horses and cattle.[30]  Defendants have fully briefed their response to Plaintiffs' geographic descriptiveness and use arguments elsewhere,[31] and will not do so again here.  Plaintiffs' argument about Defendants' wording is similarly without merit.

---

[27] *See, e.g.*, Pls.' Corrected Mot. Prelim. Inj. Ex. 2, ECF No. 35-1; Pls.' Mot. Summ. J. Ex. 13, ECF No. 94-5.
[28] Ex. F, at 3.
[29] Defs.' Mot. Summ. J. 2–6, 10–16, ECF No. 89.
[30] Pls.' Mot. Summ. J. 8, ECF No. 94.
[31] Defs.' Resp. to Mot. Partial Summ. J. 3–20, ECF No. 85.

22.     In their Fourth Amended Answer and Counterclaims, Defendants sought declaratory judgments that "Sarco Creek Ranch" is primarily geographically descriptive and incapable of serving as a trademark or service mark absent secondary meaning when used to identify any "ranch-related goods or services of Plaintiffs/Counter-Defendants, who operate a ranch located on Sarco Creek" or "a ranch located on a creek near Sarco".[32]     Although it appears that Plaintiffs only claim Defendants infringe Plaintiffs' horse and cattle business,[33] Plaintiffs assert that they make and sell a wide variety of products on their ranch.[34] The goal of Defendants' language was to encompass all of these products, including Plaintiffs' alleged retail store services, in case Plaintiffs later tried to accuse Defendants of other types of infringement.    Plaintiffs' sales of horses and cattle that were raised on their ranch are clearly "ranch-related goods or services", especially when these sales were made on the ranch itself.    Accordingly, Defendants' declaratory judgment pleadings are broad enough to encompass Plaintiffs' alleged retail store services.

---

[32] Defs.' 4th Am. Answer & Countercls. 40–42, ECF No. 47.
[33] Ex. A, at 156, 183–84; Pls.' 2d Am. Compl. 4–6, ECF No. 46.
[34] *E.g.*, Pls.' 2d Am. Compl. 4, ECF No. 46.

### G. Mr. Parmley Is a Proper Party

23.     Plaintiffs argue that there is no controversy between Mr. Parmley and the Defendants because he transferred his rights to Sarco Creek Ranch, LLC.[35] The goal of this argument appears to be to insulate Mr. Parmley from any personal liability as a result of his participation in this lawsuit.  The argument fails for two reasons: (1) Mr. Parmley is a plaintiff in this action, meaning he is asserting claims against the Defendants and is responsible for the conduct of the action, and (2) Mr. Parmley's alleged transfer to Sarco Creek Ranch, LLC was invalid.

### i.     Mr. Parmley Voluntarily Participated as a Plaintiff

24.     This lawsuit was originally filed by Sarco Creek Ranch, LLC.[36]  After Plaintiffs served Defendant Sarco Creek Land & Cattle Co., LLC ("Land & Cattle"), Defendants realized that Plaintiffs' applications had been filed by Mr. Parmley and that there was no record transferring ownership of the resulting registrations from him to his limited liability company.  Defendants became worried that they might prevail against Sarco Creek Ranch, LLC, only to have the USPTO refuse to cancel the mark because its record owner was Mr. Parmley. Accordingly, when Land & Cattle answered, it pleaded a third-party action against Mr. Parmley to ensure that Plaintiffs' cancellation claims would not be invalidated

---

[35] Pls.' Mot. Summ. J. 8–9, ECF No. 94.
[36] Pl's. Original Compl., ECF No. 1.

for failure to include the real party in interest.[37]  Ultimately, the third-party action

disappeared when Plaintiffs filed an amended complaint including Mr. Parmley as

a plaintiff and asserting claims on his behalf against all the Defendants.[38]  At that

point, there was no longer any need for a third-party action.[39]

25.     Since that time, Mr. Parmley has voluntarily participated in this action

as a plaintiff without objection.  He has been a party to Plaintiffs' motions and

responses.  Accordingly, he will be liable if the Defendants prevail and convince

the Court that this case was an exceptional one.  He will also be liable if

Defendants succeed in obtaining the declaratory judgment they have sought,

because he was one of the parties opposing it.

### ii.     Plaintiffs' Alleged Transfer of Trademark Rights Failed

26.     Furthermore, Plaintiffs' claim that Mr. Parmley transferred his rights

appears to be based on recently-contrived efforts to shore up ownership of those

rights in response to Defendants' identification of infirmities.  Plaintiffs' legal

theory that Mr. Parmley's D/B/A "converted" into a limited liability company is

facially without merit.  The Texas Business Organizations Code makes no

---

[37] *See* Def. Land & Cattle's Original Answer, Countercls., & 3d Party Claims 3–4, 16, 26–30, ECF No. 13.

[38] *See* Pls.' 1st Am. Compl., ECF No. 23.

[39] *See* Defs.' 2d Am. Answer & Countercls., ECF No. 26 (pleading defenses and counterclaims against Mr. Parmley as a Plaintiff); Defs.' Resp. Mot. Dismiss for Failure to State Claim 2–4, ECF No. 27 (discussing filing of third party action against Mr. Parmley and its mooting when he voluntarily became a plaintiff).

provision for the conversion of an individual into a limited liability company.[40] Plaintiffs' argument suggests that Mr. Parmley's registration of an assumed name (or a "D/B/A") created an entity separate from himself, and that through the conversion of that entity, Mr. Parmley's federal registration became the property of Sarco Creek Ranch, LLC. The conflict between this theory and Texas law is irreconcilable.

27. Nevertheless, when Defendants challenged Sarco Creek Ranch, LLC's status as registrant of the mark, Plaintiffs produced alleged documentation of their purported conversion in the form of two signed, but undated instruments.[41] Plaintiffs claimed that one of these instruments was filed with the Secretary of State of Texas along with Sarco Creek Ranch, LLC's certificate of formation.[42] In fact, the instrument purporting to convert Mr. Parmley's D/B/A was never filed with the Secretary of State.[43] Defendants believe Plaintiffs' counsel had Mr.

---

[40] *See* Tex. Bus. Org. Code §§ 10.101(a), 10.102(a) (authorizing conversion of domestic entities and non-code organizations, by adoption of a plan of conversion); *Id.* at § 1.002(18), (56), and (62) (defining "domestic entity" and "non-code organization" by incorporating the definition of "organization", which does not include individuals).

[41] Ex. I; Ex. J. *See* Pls.' Corrected Resp. Mot. Partial Summ. J. 9, ECF No. 61; Pls.' Surreply Mot. Partial Summ. J. 6, ECF No. 66.

[42] *Compare* Pls.' Corrected Resp. Mot. Partial Summ. J. 11, ECF No. 61 (stating that Exhibit G is "SCR LLC certificate of filing"), *with* Pls.' Corrected Resp. Mot. Partial Summ. J., at Ex. G, ECF No. 61-1 (including "Operational Agreement" and "Appendix A" in Exhibit G).

[43] *See* Ex. K (containing the actual records on file with Secretary of State of Texas for Sarco Creek Ranch, LLC). These transfer documents first appeared after Defendants moved for summary judgment that, because neither Plaintiff was the registrant named in the federal registration, neither could maintain their Lanham Act Section 32(1)(a) claims. Defs.' Mot. Partial J. Pleadings & Partial Mot. Summ. J., ECF No. 48. In response, Plaintiffs produced an undated "Operational Agreement" and its "Appendix A" on September 10, 2014, purporting to

Parmley execute them in September 2014 in response to Defendants' arguments, making them part of Plaintiffs' ongoing practice of fabricating new evidence to refute Defendants' arguments.[44]

28.    Lastly, Defendants note that, even if the transfer documents are legitimate and contemporary with Mr. Parmley's formation of Sarco Creek Ranch, LLC, they are ineffective.  An assignment of trademark rights must be total, and

_____

document a conversion of Mr. Parmley's sole proprietorship into Sarco Creek Ranch, LLC.  Pls.' Corrected Resp. Mot. Partial Summ. J. Ex. G, ECF No. 61-1.  Plaintiffs represented that these documents were contemporary with the formation of Sarco Creek Ranch, LLC in 2010.  *See* Pls.' Corrected Resp. Mot. Partial Summ. J. 11, ECF No. 61 (stating that Exhibit G is "SCR LLC certificate of filing").  However, Sarco Creek Ranch, LLC's certificate of formation does not appear to share authorship with the Operational Agreement and its Appendix A, both of which bear distinctive grammatical indications of being drafted by Plaintiffs' counsel in this proceeding, who did not represent Plaintiffs in 2010.  *See* Ex. L.  After receiving these documents, Defendants pointed out that it was impossible for a sole proprietorship to convert into anything.  Defs.' Reply to Corrected Resp. Mot. Partial Summ. J. 9–10, ECF No. 63.  Plaintiffs then produced another instrument out of thin air on September 23, this one an undated "Assignment of Ownership" allegedly showing the assignment by "William Parmley DBA SCR" of his assets to Sarco Creek Ranch, LLC.  Pls.' Surreply Mot. Partial Summ. J., at Ex. 3, ECF No. 66-3.  Plaintiffs appear to have admitted that this document was an after-the-fact fabrication.  *See* Pls.' Surreply Mot. Partial Summ. J. 6, ECF No. 66 ("Plaintiff supplements with a memorialization of the assignment on the side of caution.").

[44] At this point, Plaintiffs' practice of fabricating evidence is impossible to deny.  In support of their argument against Plaintiffs' motion for summary judgment in the cancellation proceedings before the USPTO in 2013, Defendants noted that Plaintiffs' alleged retail store did not even have a sign.  Ex. M, at 5.  A sign magically appeared when Plaintiffs moved for their preliminary injunction a year later.  Pls.' Corrected Mot. Prelim. Inj. Ex. 10, ECF No. 34-2.  Similarly, Defendants noted that Plaintiffs' alleged store had no hours of operation in 2013.  Ex. M, at 5.  Hours of operation subsequently appeared on Plaintiffs' Facebook page in 2014.  *See* Ex. N.  After Defendants noted the small number of "likes" on Plaintiffs' Facebook page showed they were not well known, Plaintiffs proceeded to purchase over 10,000 "likes" and attempt to use that as evidence that they were well known.  *See* Defs.' Resp. Mot. Prelim. Inj. 13 & n.41, ECF No. 39; Ex. A, at 124–28.  In 2013, Defendants noted that Plaintiffs did not provide retail store services over the Internet, because they did not have a webpage.  Ex. M, at 5.  Plaintiffs subsequently started a webpage in 2014.  Ex. A, at 132–34.  Most recently, Defendants moved for summary judgment after Mr. Parmley admitted he had stopped selling cattle in 2003 and sold off his herd.  Defs.' Mot. Summ. J. 2–6, 10–20, ECF No. 89.  In his most recent declaration, Mr. Parmley has announced that he is now shopping for cattle to "continue" his cattle business.  Pls.' Mot. Summ. J. Ex. 10, ECF No. 94-2.

anything less than a total assignment is invalid. *See* 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 18:8 (4th ed. 2014) (hereinafter *McCarthy on Trademarks*). Plaintiffs' "Assignment of Ownership" reserves a reversionary interest in Mr. Parmley as grantor, meaning it is not a complete assignment of all rights in the mark.[45] Accordingly, no matter when it was executed, the assignment is invalid and has conferred no rights on Sarco Creek Ranch, LLC.

29.     For the foregoing reasons, Mr. Parmley has not established as a matter of law that he transferred ownership of any rights he owns in the term "Sarco Creek Ranch" to Sarco Creek Ranch, LLC. Accordingly, he remains liable on Defendants' claims.

### H. Geographic Descriptiveness

30.     Plaintiffs next argue that they are entitled to summary judgment on Defendants' geographic descriptiveness defense.[46] With one exception, this argument is taken verbatim from Plaintiffs' earlier motion for partial summary judgment.[47] The exception is Plaintiffs argue that Defendants used the wrong wording in pleading their geographic descriptiveness defenses and counterclaims, because Defendants referred to "ranch-related goods or services" instead of "class

---

[45] Ex. J, at 1.
[46] Pls.' Mot. Summ. J. 9–12, ECF No. 94.
[47] *See* Pls.' Mot. Partial Summ. J. 2–5, ECF No. 79.

35 selling horses and cattle".[48]   As discussed above, "ranch-related goods or services" is broad enough to include retail sales of horses and cattle made from Plaintiffs' ranch.

31.   Defendants have already fully responded to the remainder of Plaintiffs' geographic descriptiveness argument in their response to Plaintiffs' motion for partial summary judgment.[49]   To avoid unnecessary repetition, they incorporate that response and its exhibits by reference as if fully set out herein. For the reasons discussed in their incorporated response, Plaintiffs' argument on this issue is without merit.

### I.  Plaintiffs Have Not Established Infringement as a Matter of Law

32.   Plaintiffs' final argument is that Defendants have admitted to willful infringement because they pleaded that they continue to use the term "Sarco Creek Ranch" knowing that it is a registered trademark.[50]   Plaintiffs also state that they have attached evidence of confusion in Exhibit 10 to their motion, but that exhibit contains no allegations of confusion.[51]   Exhibit 9 does contain allegations of

---

[48] Pls.' Mot. Summ. J. 12, ECF No. 94.
[49] Defs.' Resp. Mot. Partial Summ. J., ECF No. 85.
[50] Pls.' Mot. Summ. J. 12, ECF No. 94.
[51] *Id.*; Pls.' Mot. Summ. J. Ex. 10, ECF No. 94-2.  Plaintiffs' "corrected" motion changed this reference and added additional items, but these were all filed late and should not be considered by the Court.  Pls.' Corrected Mot. Summ. J. 12, ECF No. 96.  Even if they are considered, they do not change Defendants' analysis.

confusion,[52] but they do not establish likelihood of confusion or infringement as a matter of law.

### i. Legal Authority

33.    In order to succeed on a claim for trademark infringement, a party must show (1) that it has a protectable right in the alleged mark and (2) that there is a likelihood of confusion between the marks.  A party does not have a protectable right in an alleged mark where that mark is invalid.  *See Sugar Busters LLC v. Brennan*, 177 F.3d 258, 267–68 (5th Cir. 1999).  To determine whether there is a likelihood of confusion between the products of a plaintiff and a defendant, district courts in the Fifth Circuit examine eight "digits of confusion": (1) the similarity of the two products; (2) the identity of retail outlets and purchasers; (3) the identity of advertising media; (4) the strength of the trademark or trade dress in question; (5) the intent of the defendant; (6) the similarity of design; (7) actual confusion; and (8) the degree of care employed by consumers.  *Blue Bell Bio-Med. v. CIN-BAD, Inc.*, 864 F.2d 1253, 1259–60 (5th Cir. 1989).  These factors are flexible and do not apply mechanically to every case.  *Paulsson Geophysical Svcs., Inc. v. Sigmar*, 529 F.3d 303, 311 (5th Cir. 2008).

---

[52] Pls.' Mot. Summ. J. Ex. 9, ECF No. 94-2.

### ii. Defendants Have Not Admitted Infringement

34.     Plaintiffs' initial argument, that Defendants have admitted infringement because they admit to using the term "Sarco Creek Ranch", is without merit.  There is no infringement without a likelihood of confusion.  4 *McCarthy on Trademarks* § 23:1.  This principle is what allows both a famous faucet company and a famous airline to use the word mark "Delta" throughout the United States without fear of liability to one another.  That Defendants admit to using the same term as Plaintiffs does not automatically require a finding of willful infringement.

### iii. Plaintiffs Have Not Established Protectable Rights as a Matter of Law

35.     Furthermore, there can be no infringement of an invalid mark.  *See Sugar Busters LLC v. Brennan*, 177 F.3d 258, 267–68 (5th Cir. 1999).  Defendants have already demonstrated conclusively in their own motion for summary judgment that Plaintiffs' purported trademark is invalid.[53]  However, even if the Court disagrees that Defendants have established invalidity as a matter of law, they have at least presented enough evidence to preclude summary judgment for Plaintiffs on their invalidity arguments.  The result is that Plaintiffs cannot establish protectable rights in the term "Sarco Creek Ranch" as a matter of law.

---

[53] Defs.' Mot. Summ. J., ECF No. 89.

### iv. Plaintiffs Have Not Established Likelihood of Confusion as a Matter of Law

36.     Lastly, Plaintiffs make no attempt to analyze the digits of confusion to show how Defendants' conduct requires the Court to find that there is a likelihood of confusion.[54]  Plaintiffs refer the Court to a declaration made by Mr. Parmley, but make no attempt to discuss or analyze it in their argument.[55]  An examination of this declaration shows that it describes the same things Plaintiffs tried to use to show confusion in their Motion for Preliminary Injunction: accounts getting mixed up at a building supply store, checks and a mariachi band being sent to the wrong address, and people tagging hunting pictures to the wrong location on Facebook.[56] For the reasons discussed below, these do not establish a likelihood of confusion as a matter of law.

### a. Similarity of Products

37.     The first digit of confusion is the similarity of the products marketed under the term in question.  *Blue Bell Bio-Med.*, 864 F.2d at 1260.  When the goods and services of the parties to an infringement action are not directly competitive, the question of their similarity is whether they are related, not because

---

[54] In their motion for a preliminary injunction, Plaintiffs dismissed the need to analyze the digits based on a misreading of two cases.  If Plaintiffs again argue in reply to this response that they need not analyze the digits of confusion, Defendants respectfully refer the Court to the discussion of Plaintiffs' erroneous reasoning found in Defendants' response to Plaintiffs' preliminary injunction motion.  Defs.' Resp. Pls.' Mot. Prelim. Inj. 20–21, ECF No. 39.

[55] Pls.' Mot. Summ. J. 12, ECF No. 94.

[56] *Compare* Pls.' Mot. Summ. J. Ex. 9, ECF No. 94-2, *with* Pls.' Mot. Prelim. Inj. 9–10, ECF No. 34.

of any inherent common quality, but in the sense that buyers are likely to believe that the goods, similarly marked, come from the same source, or are somehow connected with or sponsored by the same company. *See* 4 *McCarthy on Trademarks* § 23:1. Defendants concede that it is plausible that a ranch that sold horses and cattle would also sponsor hunting activities. Accordingly, even though Plaintiffs' and Defendants' goods and services are not similar in a commercial sense, they are rural, agricultural activities that it would be reasonable for people to believe came from the same business.

### b. Identity of Retail Outlets and Purchasers

38.     The second digit is the identity of retail outlets and purchasers. *Blue Bell Bio-Med.*, 864 F.2d at 1260. Plaintiffs have submitted no evidence in this case that they share the same customers or retail outlets as Defendants.[57]

### c. Identity of Advertising Media

39.     The third digit is the identity of advertising media. *Blue Bell Bio-Med.*, 864 F.2d at 1260. Plaintiffs have submitted no evidence in this case that they and Defendants share the same advertising media. Defendants' logo is displayed on their trailers, on their ranch, and has been shown on the Outdoor

---

[57] In fact, Mr. Parmley repeatedly refused to answer this question in his deposition. *See* Ex. A, at 152–63.

channel.[58]   Plaintiffs appear to advertise through classified advertisements, magazines, and through Facebook.[59]

### d. Strength of the Trademark or Trade Dress in Question

40.   The fourth digit is the strength of the trademark or trade dress in question. *Blue Bell Bio-Med.*, 864 F.2d at 1260.  As discussed above and elsewhere, Plaintiffs' alleged mark is primarily geographically descriptive and thus very weak.  It also does not appear to have been used beyond what the courts consider to be *de minimis* use.[60]

### e. Intent of the Defendant

41.   The fifth digit is the intent of the party charged with infringement. *Blue Bell Bio-Med.*, 864 F.2d at 1260.  Defendants have submitted evidence that they began using the term "Sarco Creek Ranch" to describe their property in 1986 and did not learn of Plaintiffs' use of the same name until 2011.[61]  Accordingly, Defendants did not choose the name "Sarco Creek Ranch" with the intent of profiting off of any goodwill associated with Plaintiffs.

### f. Similarity of Design

42.   The sixth digit is the similarity of the trademark's design. *Blue Bell Bio-Med.*, 864 F.2d at 1260.  Defendants concede that, because Plaintiffs' alleged

---

[58] Ex. F, at 3–4.
[59] *E.g.*, Ex. A, at 83, 93, 126–27.
[60] Defs.' Mot. Summ. J. 2–6, 10–20, ECF No. 89.
[61] Ex. E, at 90–91; Ex. F, at 3.

mark is a word mark, Defendants' name for their ranch is identical to Plaintiffs' registered term.

### g. Actual Confusion

43.     The seventh digit of confusion is whether there is evidence of actual confusion. *Blue Bell Bio-Med.*, 864 F.2d at 1260. The incidents discussed in Mr. Parmley's affidavit do not amount to legally significant actual confusion.

44.     Because the Internet is largely based on word-searches, it often associates otherwise unrelated marks. The Ninth Circuit has held that "it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1151–52 (9th Cir. 2011). For this reason, the fact that the goods of both parties to an infringement action are sold or advertised on the Internet on a website like eBay is not proof that the goods move in the same channels of trade or that, if bearing the same mark, they would be seen by consumers as coming from the same or an affiliated source. 4 *McCarthy on Trademarks* § 24:53.50.

45.     Plaintiffs' evidence of Internet confusion comes from some of the Defendants' guests tagging pictures of themselves on Facebook as having been taken at Sarco Creek Ranch. Facebook's automated location system interpreted "Sarco Creek Ranch" as being the only "Sarco Creek Ranch" which had a

Facebook page: Plaintiffs' ranch. The result was that pictures of hunting trips appeared on Plaintiffs' page. Defendants' guests were not confused about where they had been. Plaintiffs assert that this confused some of their customers, but they have not produced summary judgment evidence of this confusion other than inadmissible hearsay recounted in Mr. Parmley's declaration. Furthermore, to the extent this did constitute evidence of actual confusion, it was mostly due to Plaintiffs not removing the photos as Facebook automatically tagged them, an action that was at all times within their power as administrators of the page.

46. Evidence of actual confusion must be viewed in its evidentiary context. 4 *McCarthy on Trademarks* § 23:13. Confusion due to carelessness caused by a failure to check business addresses, to inattention and indifference, and evidenced by misdirected mail and phone calls caused by the carelessness of the post office is not actionable. *See id*. Accordingly, that UPS accidentally delivered packages and that a mariachi band showed up at the wrong address do not evidence confusion in the marketplace for Plaintiffs' purported services, nor does the fact that a building supply store confused Plaintiffs with Defendants. None of these instances involve a customer or would-be customer mistaking Plaintiffs' services for Defendants' or believing that Plaintiffs had somehow sponsored or approved of Defendants' activities. In other words, they do not show situations where

Plaintiffs' goodwill or brand were jeopardized. Taken together, this evidence shows nothing more than carelessness.

### h. Degree of Care Employed by Consumers

47. The last digit of confusion in the Fifth Circuit is the degree of care employed by consumers. *Blue Bell Bio-Med.*, 864 F.2d at 1260. The degree of care employed by consumers in this case is high. Plaintiffs used to sell cattle and now sell horses. Livestock are hardly impulse buys. They are usually expensive, though Plaintiffs' horses are not, and have to be transported and fed. Mr. Parmley maintains that people who buy his livestock do so after extensive research into their bloodlines.[62] Similarly, Defendants sell hunting activities only at premium prices.[63] The result is that the products in this case are purchased only after substantial thought and research. Accordingly, the likelihood of confusion is very low.

### i. Conclusion on Likelihood of Confusion

48. Although Plaintiffs and Defendants' products are arguably related and sold under the same mark, they are marketed through different means to different customer bases, and both customer bases exercise a high degree of care in making their selections. Under these circumstances, the digits of confusion weigh against a finding that there is a likelihood of confusion. On top of these factors, Plaintiffs'

---

[62] Ex. A, at 136–37.
[63] Ex. F, at 3.

long delay in filing suit undercuts their claim that there is a likelihood of confusion. *See Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 265 (5th Cir.), *cert. denied*, 449 U.S. 899 (1980) ("Plaintiff brought this suit after nearly ten years of simultaneous use of the mark . . . . A trademark owner that strongly believed its customers were being deceived would hardly have remained idle for such an extended period of time."); 6 *McCarthy on Trademarks* § 31:11. Lastly, even if the Court rejects the foregoing legal analysis, the report of Defendants' expert witness creates a genuine issue of material fact as to whether there is a likelihood of confusion.[64]

### III. Objections to Plaintiffs' Summary Judgment Evidence

49. As noted in Part I of this response, Defendants object to all of the exhibits and evidence filed in support of Plaintiffs' motion after January 5, 2015, as having been untimely filed.

50. Additionally, Defendants object to the inadmissible hearsay contained in Paragraph 14 in Exhibit 9 to Plaintiffs' motion, which states that "[t]he posting of these photographs to my Facebook page caused confusion with my consumers. Suzanne Shirley, Lisa Ennis, Bryn Russell, Jobeth Whitlow, Boyd Ray, and Tammy Thomas contacted me regarding the photographs on my Facebook

---

[64] Exs. O-1; O-2.

business page."[65]  Defendants also object to the inadmissible hearsay contained in the following sentence in Paragraph 16 of the same declaration: "I have had comments from my consumers that this conveys the impression that my Sarco Creek Ranch is associated with those activities."[66]  Mr. Parmley cannot testify at trial regarding comments made to him by these individuals.  *See* Fed. R. Evid. 801–02.  If they were confused, they need to testify about that.  Accordingly, if Plaintiffs wished to present summary judgment evidence of confusion, they needed to do so in the form of affidavits or declarations from the individuals identified, not in the form of hearsay testimony from Mr. Parmley.

51.    Defendants also object to Mr. Parmley's declaration in Paragraph 10 of Exhibit 10 that he plans to continue his cattle operation.[67]  Mr. Parmley stated in his deposition that he stopped running cattle in 2003 and sold out his cattle operation at that time.[68]  Defendants used this information to move for summary judgment against him.[69]  Now that these admissions are inconvenient, he has tried to escape them by declaring that he is attempting to "continue [his] cattle operation" by searching for new breeding cattle.[70]  He cannot now "continue" an operation that he terminated twelve years ago.  Because this portion of his

---

[65] Pls.' Mot. Summ. J. Ex. 9, ECF No. 94-2.
[66] *Id.*
[67] Pls.' Mot. Summ. J. Ex 10, ECF No. 94-2.
[68] Ex. A, at 52–53, 99.
[69] *See* Defs.' Mot. Summ. J. 2–6, 10–20, ECF No. 89.
[70] Pls.' Mot. Summ. J. Ex. 10, ECF No. 94-2.

declaration attempts to avoid summary judgment by contradicting his earlier admission, it is a sham declaration and should be excluded by this court. *See Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 105–06 (2d Cir. 2011); *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012).

## IV.  Defendants' Summary Judgment Evidence

52.    In support of the foregoing arguments, Defendants submit the following summary judgment evidence as exhibits to this motion:

a. Exhibit A — Excerpts of Mr. Parmley's Deposition
b. Exhibit B — Mr. Parmley's Spreadsheet, Deposition Exhibit 10
c. Exhibit C — Plaintiffs' Responses to Cancellation RFAs
d. Exhibit D — Mr. Parmley's Demand Letter
e. Exhibit E — Excerpts of Mr. Greeson's Deposition
f. Exhibit F — Affidavit of Milton Greeson
g. Exhibit G — Plaintiffs' Motion to Dismiss Cancellation Proceeding
h. Exhibit H-1 — Defendants' Production Showing Use Part 1
i. Exhibit H-2 — Defendants' Production Showing Use Part 2
j. Exhibit I — Undated "Operational Agreement" and "Appendix A"
k. Exhibit J — Undated "Assignment of Ownership"
l. Exhibit K — Actual Documents Filed with Secretary of State
m. Exhibit L — Declaration of Mr. Parmley Showing Representation
n. Exhibit M — Cancellation Response to Plaintiffs' MSJ
o. Exhibit N — Screenshots of Plaintiffs' Facebook Page
p. Exhibit O-1 — Expert Report of Robert Frank Part 1
q. Exhibit O-2 — Expert Report of Robert Frank Part 2
r. Exhibit P — Affidavit of Lee Keeling

## V.  Prayer

WHEREFORE, Defendants ask the Court to sustain their objections to Plaintiffs' late-filed briefing and evidence, sustain their objections to Plaintiffs' summary judgment evidence, and deny Plaintiffs' motion for summary judgment,

as well as to grant Defendants such other and further relief as to which they may be justly entitled.

Respectfully submitted,

WALKER KEELING LLP
120 S. Main St., Suite 500
P.O. Box 108
Victoria, TX 77902-0108
(361) 576-6800
(361) 576-6196 (FAX)

By: /s/ W. Lee Keeling
  W. LEE KEELING
  Attorney-in-Charge
  Texas State Bar No. 11161420
  S.D. Tex. I.D. No. 15791
  *lkeeling@walkerkeeling.com*
  JOHN H. H. BENNETT
  Texas State Bar No. 24069369
  S.D. Tex. I.D. No. 1409941
  *jbennett@walkerkeeling.com*

ATTORNEYS FOR
DEFENDANTS/COUNTER-
PLAINTIFFS MILTON S.
GREESON, BRIDEY DUNN
GREESON, SARCO CREEK LAND
& CATTLE CO., LLC, AND SARCO
CREEK CATTLE CO., LLC

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that the foregoing was served on the following parties in accordance with the Federal Rules of Civil Procedure on this, the 26th day of January, 2015:

> LAW OFFICES OF DELPHINE M. JAMES
> Delphine M. James
> 2616 South Loop West
> Suite 415
> Houston, TX 77054
> Attorney for Plaintiffs/Counter-Defendants

> /s/ W. Lee Keeling
> W. Lee Keeling